"Che opinion oj trie court was delivered, by

Mr. Justice' Jilch vrdson.

it will be satisfactory to record the evidence, as adduced on the part of the defendants by way of excuse. Captain Wil-kie said the boat grounded, hove off, came to anchor, was pump ed and again grounded. She then heeled to starboard and the bilge water settled aft and injured the books in the cabin. Upon discovering that they were wet, he had the books removed from the cabin. He further said that there is no avoiding grounding in coming through the channel. To ground, he said, is an unavoidable accident.
Inland navigation, by the means of steam-boats, has been introduced into South-Carolina within the last seven years; and the use of these boats has accelerated and cheapened so much the carriage of our produce to market, and has so actively cooperated with schemes of internal improvement generally, that I should be sorry indeed to impose any check on the enterprise of the steam boat companies. On the other hand, their own final advantage depends greatly upon the implicit confidence of the public, arising from the known safety of the goods committed to their charge.
*265 But whatever may be the just estimate of their chances of Success, the law of common carriers has been well settled and is convenient, safe and wholesome. The carrier is bound, not duly to take all due care of the thing’committed to his charge, but he is placed by the common Law in the character of an insurer in many respects, and liable for all losses except, first, in cases where the injury appears to have arisen from some act, not, done by the hand of man, unless - by public enemies or the owner himself; or 2nd. in cases where the loss could not be guarded against by human skill and prudence. The severity of the law arises from the circumstance that the thing carried is entirely within the power of the carrier, and were he not liable, prima facie, upon the bare fact of a loss appearing, his employer could have no means of proof, and dishonest collusions might be easily entered into to rob and share the spoil; exempli gratia, how easy would it be to rob the boat, and then raise the appearance of an accidental loss by fire: 5th. East, 428; 1 Term R. 27; 4 Term, R. 528; 2 Com. on Con. 292, 323; 2 Raymd 918; Abbott, 242.
In the case before us, the box of books had been placed in the cabin, and after the accident of grounding, the bilge- water rose and injured the books. But may not the injury have been avoided by due diligence and attention on the part of the carriers. It is said, that according to the character and channel of the creek where the boat grounded, the grounding is unavoidable, while waiting for the tide. But admitting this, it does not follow that the carrier may not select with proper skill the place where the boat is to come to anchor, and where he ought to know she must ground, in order that she may ground Upon a safe bottom. But let it be admitted that the grounding was altogether unavoidable and the carrier no way Habile for that accident; yet it does not follow that such a quantity of bilge water as will reach the cargo stowed in the cahin, was also an unavoidable accident. . The moment the boat heeled, it followed that the bilge water would settle towards the stern; and the carrier was bound to know this, and to remove, if necessary, the cargo there stowed. The box of books, being in the cabin, *266 could have been as easily removed before as after the injury; The carrier is liable for bad stowage or default .of good keeping. Cro: James, 33.0; 1 Bacon, 344. The injury then was not an unavoidable consequence of the grounding, but the consequence of negligence on grounding and doés not co.me within the exception in the bill of lading.<•
Many injuries for which a carrier is liable may be still trac-ced to some unavoidable though remote cause. To illustrate, the distinction, I will take the case of Eveleigh vs. Sylvester, which has been relied lipón,, oh the part of the defendants. There the unavoidable accident, under which the defendant was protected against the loss, was that a hidden snag pierced the boat and she sunk. ' If is to be observed that in our river navigation, owing to the- forests upon their banks and frequent inundations, hidden snags frequently occur, and constitute a danger peculiar to rivers so situated; and from the frequent shifting of these snags and their recurrence from freshets, they constitute in our rivers an instance of the actus Dei, which skill and experience cannot guard against; and hence, reasonably, and I may add naturally, this new exception to the liability of carriers at common law. Looking to the rationale of the rule, that a carrier is liable for all accidents, except by the act of God or the public enemy, and regarding the proper character of our rivers, we know that swags infest our inland navigation, and being wholly concealed, arise no more from the intervention of man than storms or lightning. Regarding, therefore, the justice, reason and conveniénce of the rule at common law, the judges in the case of Eveleigh & Sylvester recognized an old practice of excepting the dangers of the river, and extended the rule to hidden snags. But suppose for a moment the snag not hidden, o.r one which might have been discovered by the rippling of the water, or suppose the snag, though, hidden, yet known to the patroons of river craft, would an accident arising from it constitute any excuse? Surely not. Or suppose the snag, thought -new and hidden, to have been so weak as that it could not have pierced the bottom pf a sound hull: in none of those instances fcould it form an excuse for the carrier. Again, suppose thee *267 -■aiiag to' pierce a sound boat, but to let in only sc?1 much water' as by diligent exertion might" be kept down, would the hare name of an accident by a snag* throw a mantle over negligence .or shield the carrier from the charge of after inactivity? Surely not. Even where high winds assail a vessel and she perishes,but evidently from uusoundness or want of skill, the carrier ii liable. Now apply such reasoning to the case before us. Suppose the carrier justified in grounding, because he must wait for the comuig tide, yet still he -may choose his place of casting' anchor skilfully. Go further, and say he did choose the best place, yet could he not have saved the box of books placed in the cabin from the bilgevrater by human foresight and due diligence. It appears to me that due care would have prevented the injury, and that the carrier is in a situation similar to thos® I have suggested, of a boat unavoidably injured, but the damage to the cargo still avoidable by diligence and activity. The motion is, therefore, dismissed.
King, for the motion.
Rice, contra.
Lolcock, Gantt, and Johnson, Justices, concurred.